SAMUEL KORNHAUSER, Bar No. 83528
LAW OFFICES OF SAMUEL KORNHAUSER
155 Jackson Street, Suite 1807
San Francisco, California 94111
Telephone: (415) 981-6281

Attorney for Plaintiff, Michael H. Federighi

# UNITED STATES DISTRICT COURT
## FOR THE
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL H. FEDERIGHI, an individual, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> ) <br> SUSAN K. FEDERIGHI, an individual, ) <br> ) <br> Defendant ) <br> ) <br> ) | **Case No.** <br><br> **COMPLAINT FOR BREACH OF CONTRACT; BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; FRAUD AND NEGLIGENT MISREPRESENTATION** <br><br> **JURY DEMAND** |

LAW OFFICES
SAMUEL KORNHAUSER
155 Jackson Street, Suite 1807
San Francisco, CA 94111

**PARTIES JURISDICTION AND VENUE**

1. Plaintiff, MICHAEL H. FEDERIGHI ("Plaintiff" or "MICHAEL") is an individual residing in Cape Coral, State of Florida.

2. Defendant SUSAN K. FEDERIGHI ("Defendant" or "SUSAN") is an individual residing in the County of Marin, State of California.

3. Plaintiff is informed and believes, and on that basis alleges, that at all times mentioned herein, Defendants and each of them were agents, servants, partners, co-members, shareholders, co-shareholders, joint venturers, and/or employees of each of the other Defendants, and in doing the things herein alleged, were acting within the course and scope of their employment, partnership, agency, membership or other affiliation, thereby rendering each Defendant legally responsible for the acts, omissions, breaches and other conduct of each remaining Defendant.

4. This Court has subject matter jurisdiction, pursuant to 28 U.S.C. §1332, because all plaintiffs and all defendants are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. Venue is proper in this federal court in San Francisco, California because some or all of the acts alleged in this Complaint arise out of agreements entered into in the County of Marin, some or all of the acts were committed or are to be performed in Marin County and because all of the Defendants reside in the County of Marin, State of California.

**The Marital Settlement Agreement**

5. Plaintiff incorporates by reference the preceding paragraphs 1 through 4 as though fully set forth herein.

6. MICHAEL and SUSAN were married on August 7, 1986.

7. A Judgment for Dissolution of Marriage of MICHAEL and SUSAN was entered on December 28, 1990.

8. On or about April 23, 1992, MICHAEL and SUSAN entered into a signed written Marital Settlement Agreement (the "MSA"). The MSA was notarized by MICHAEL and SUSAN on May 5, 1992 and again on May 8, 1996. A true and correct copy of the MSA (with confidential private information redacted, is attached hereto as Exhibit "A").

9. Neither the Judgment for Dissolution of Marriage nor the MSA contains a continuing jurisdiction clause.

10. MICHAEL and SUSAN agreed to perform and promised to perform certain obligations under the MSA.

11. SUSAN has failed and refused, and continues to fail and refuse to perform her obligations under the MSA, including, but not limited to, payment of approximately $36,500 in sales proceeds from the sale of a 32 foot Bayliner motor yacht pursuant to Section 9.1 of the MSA.

12. SUSAN has failed and refused, and continues to fail and refuse to perform her obligations under the MSA, including, but not limited to, payment of her one-half (1/2) share of and responsibility for real estate taxes, totaling approximately $55,000, which MICHAEL has advanced, but which SUSAN continues to refuse to repay.

13. SUSAN has failed and refused, and continues to fail and refuse to perform her obligations under the MSA, including, but not limited to, repayment to MICHAEL of $87,500 which MICHAEL advanced as a real property down payment for 147 Waterside Circle, San Rafael, California, which MICHAEL has advanced pursuant to the MSA, but which SUSAN continues to refuse to repay.

14. SUSAN has failed and refused, and continues to fail and refuse to perform her additional obligations under the MSA, including, but not limited to, repayment to MICHAEL of $3,705 (as SUSAN's one-half share and responsibility) for an air conditioner replacement unit for which MICHAEL paid $7,411. SUSAN is responsible and obligated to pay Michael for one-half of the $7,411 cost of the air conditioner replacement unit pursuant to Section 5.10.4 of the MSA.

LAW OFFICES
SAMUEL KORNHAUSER
155 Jackson Street, Suite 1807
San Francisco, CA 94111

15. SUSAN has failed and refused, and continues to fail and refuse to perform her obligations under the MSA, including, but not limited to, payment of MICHAEL's share of insurance proceeds regarding litigation in the case entitled *Susan Federighi, et. al. v Hartford Underwriters Insurance Company*, Marin County Superior Court, Civil Case No. CIV 082726, as well as the Paul Davis litigation ($82,500) and the SERVPRO litigation ($167,000).

16. SUSAN has failed and refused, and continues to fail and refuse to perform her obligations under §5.10.4 of the MSA, including, but not limited to, repayment to MICHAEL of $10,707 for her half of home repairs paid for by MICHAEL, but which home repairs were the responsibility and obligation of SUSAN.

## FIRST CAUSE OF ACTION
### (BREACH OF MARITAL SETTLEMENT AGREEMENT)
### (AGAINST SUSAN)

17. Plaintiff incorporates by reference the preceding paragraphs 1 through 16 as though fully set forth herein.

18. MICHAEL has performed all obligations and promises required of him under the MSA, and all conditions to SUSAN'S obligations to perform have occurred.

19. Despite ongoing and repeated promises by SUSAN to MICHAEL to do so, SUSAN has failed and refused, and continues to fail and refuse, to perform her obligations and promises to sell the 147 Waterside property and pay MICHAEL his one half of the net sale proceeds (after first repaying MICHAEL his payments advanced to SUSAN), and to pay or reimburse MICHAEL for expenses, taxes and repairs owed by her pursuant to the terms, conditions and specifications set forth in the MSA Agreement.

20. Despite her continuing promises to pay MICHAEL which have induced him to refrain from filing suit, SUSAN has failed and refused, and continues to fail and refuse to perform her obligations under the MSA, including, but not limited to, payment of $36,500 in sales proceeds from the sale of a 32 foot Bayliner motor yacht pursuant to Section 9.1 of the MSA.

LAW OFFICES
SAMUEL KORNHAUSER
155 Jackson Street, Suite 1807
San Francisco, CA 94111

21. Despite her continuing promises to pay MICHAEL which have induced him and which were made and were intended by SUSAN to induce MICHAEL to refrain from filing suit, SUSAN has failed and refused, and continues to fail and refuse to perform her obligations under the MSA, including, but not limited to, payment of her one-half (1/2) share and responsibility of real estate taxes, totaling approximately $55,000, which MICHAEL has advanced, but which SUSAN refuses to repay.

22. Despite her continuing promises to pay MICHAEL which have induced him and which were made and intended by SUSAN to induce MICHAEL to refrain from filing suit, SUSAN has failed and refused, and continues to fail and refuse to perform her obligations under the MSA, including, but not limited to, repayment to MICHAEL of $87,500 which MICHAEL advanced as a real property down payment for the 147 Waterside Circle, San Rafael, California property, which MICHAEL has advanced, but which SUSAN refuses to repay.

23. Despite her continuing promises to pay MICHAEL which have induced him and which were made and intended by SUSAN to induce MICHAEL to refrain from filing suit, SUSAN has failed and refused, and continues to fail and refuse to perform her obligations under the MSA, including, but not limited to, repayment to MICHAEL of $3,705 (as SUSAN's one-half share and responsibility) for an air conditioner replacement unit for which MICHAEL paid $7,411. SUSAN is responsible and obligated to pay Michael for ½ of the costs of the air conditioner replacement unit pursuant to Section 5.10.4 of the MSA.

24. Despite her continuing promises to pay MICHAEL which have induced him and which were made and intended by SUSAN to induce Michael to refrain from filing suit, SUSAN has failed and refused, and continues to fail and refuse to perform her obligations under the MSA, including, but not limited to, payment of MICHAEL's: share of the $132,000 insurance settlement proceeds regarding litigation in the case entitled *Susan Federighi, et. al. v Hartford Underwriters Insurance Company*, Marin County Superior Court Civil Case No. CIV 082726, payment of MICHAEL's share of the Paul Davis litigation ($82,500) and MICHAEL's share of the SERVE PRO litigation ($167,000).

25. Despite her continuing promises to pay MICHAEL which have induced him and which were made and intended by SUSAN to induce MICHAEL to refrain from filing suit, SUSAN has failed and refused, and continues to fail and refuse to perform her obligations under the MSA, including, but not limited to, repayment to MICHAEL of $10,707 for home repairs paid for by MICHAEL, but which home repairs were the responsibility and obligation of SUSAN.

26. As a direct result of the breaches of the MSA, MICHAEL has suffered damages in an amount of at least $378,808 plus interest thereon at the legal rate.

### SECOND CAUSE OF ACTION
### (BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING)
### (UNDER THE MARITAL SETTLEMENT AGREEMENT - AGAINST SUSAN)

27. Plaintiff incorporates by reference the preceding paragraphs 1 through 26 as though fully set forth herein.

28. Implied in every contract is the implied covenant of good faith and fair dealing. In the subject MSA, there is an implied covenant of good faith and fair dealing by each party not to do anything which will deprive the other parties of the benefits of the contract.

29. SUSAN, at all relevant times, had a duty to MICHAEL, as a party to the MSA, to act fairly and in good faith pursuant to the terms of the MSA, including the covenant of good faith and fair dealing. As expressed in the MSA, SUSAN'S duties to MICHAEL thereunder included the obligation to act fairly and in good faith toward MICHAEL including, but not limited to, a duty not to fraudulently or unfairly induce him to not file suit, and an obligation on the part of SUSAN that she would do nothing to injure, frustrate or interfere with the right of MICHAEL to receive the benefits and all payments owed him pursuant to the MSA.

30. SUSAN breached the implied covenant of good faith and fair dealing by unfairly dealing with MICHAEL and by acting in bad faith toward MICHAEL, as herein alleged, including, but not limited to, continually and repeatedly promising MICHAEL that she would pay and/or reimburse him out of the sale proceeds (equity) of the 147 Waterside Circle property, with no intention of ever repaying MICHAEL, but rather to falsely induce him to continue

LAW OFFICES
SAMUEL KORNHAUSER
155 Jackson Street, Suite 1807
San Francisco, CA 94111

making payments (advances) and to induce him to refrain from filing suit to collect the monies she owed him.

31. As a direct result of the breaches of the implied covenant of good faith and fair dealing, as alleged herein, MICHAEL has suffered damages in an amount in excess of $378,808.

**THIRD CAUSE OF ACTION**
**(FRAUD- INTENTIONAL MISREPRESENTATION)**
**(AGAINST SUSAN)**

32. Plaintiff incorporates by reference the preceding paragraphs 1 through 31 as though fully set forth herein.

33. At the time SUSAN entered into the April 23, 1992 written MSA, and when SUSAN signed the MSA, SUSAN knowingly and falsely represented that she would perform under and abide by the terms of the MSA.

34. SUSAN knew that she did not intend to perform the promises expressed in the MSA nor did she intend to abide by the terms contained therein.

35. SUSAN made these false representations to MICHAEL with the intention of inducing MICHAEL to enter into and perform his obligations under the MSA.

36. SUSAN knowingly and/or recklessly made the above material and false statements and representations without any intention of performing her obligations and with no reasonable ground to believe her statements and representations were true and with the intent to have MICHAEL rely thereon, to induce MICHAEL to enter into the MSA, all to his detriment.

37. MICHAEL had no knowledge of the falsity of SUSAN's representations and promises and reasonably believed them to be true.

38. MICHAEL reasonably and justifiably relied on the truth of SUSAN's representations, and had no basis to believe her representations and promises were untrue and acted, to his detriment, on the basis that her representations and promises were true and that SUSAN intended to and would perform her promises.

39. Had MICHAEL known the true facts, MICHAEL would not have entered into the MSA.

40. Had MICHAEL known the true facts, MICHAEL would not have been lulled into complacency, as Defendant SUSAN intended.

41. As a proximate result of SUSAN's false representations, MICHAEL has suffered damages in an amount of at least $378,808 plus interest thereon at the legal rate.

42. SUSAN has acted toward MICHAEL in a fraudulent and despicable manner with a willful and conscious disregard of MICHAEL's rights. This has subjected MICHAEL to cruel and unjust hardship, thereby constituting oppression, fraud, or malice under California Civil Code, Section 3294 and justifying punitive and exemplary damages, in an amount to be determined at trial and sufficient to punish and set an example of Defendant SUSAN.

**FOURTH CAUSE OF ACTION**
**(NEGLIGENT MISREPRESENTATION)**
**(AGAINST SUSAN)**

43. Plaintiff incorporates by reference the preceding paragraphs 1 through 42 as though fully set forth herein.

44. At the time SUSAN entered into the April 23, 1992 written MSA, and when SUSAN signed the MSA, SUSAN falsely and negligently represented that she would perform under and abide by the terms of the MSA.

45. Said representations were material, and at the time said representations were made by SUSAN, said representations were made by her recklessly, negligently and without reasonable belief in their truthfulness.

46. SUSAN recklessly and negligently made the above material and false statements and representations without reasonable ground to believe such statements and representations and with the intent to have MICHAEL rely thereon, to induce MICHAEL to enter into and perform his obligations under the MSA to his detriment.

47. Plaintiff in fact reasonably and justifiably relied on Defendant's representations when he entered into the MSA.

48. Had MICHAEL known the true facts, MICHAEL would not have entered into the MSA.

49. Had MICHAEL known the true facts, MICHAEL would not have been lulled into complacency, as Defendant SUSAN intended.

50. MICHAEL has been damaged as a result of SUSAN's above described negligent misrepresentations in the amount of at least $378,808 plus interest thereon at the legal rate

**FIFTH CAUSE OF ACTION**
**(ACCOUNTING)**

51. Plaintiff incorporates by reference the preceding paragraphs 1 through 50 as though fully set forth herein.

52. Since SUSAN's entry into the MSA, SUSAN has received settlement payments in connection with the Hartford litigation ($132,000), the Paul Davis litigation ($82,500) and the Serve Pro litigation ($167,000) and has received payments from MICHAEL to pay property taxes, improvement to the 147 Waterside property and for other expenses, but SUSAN has not provided MICHAEL with written, credible evidence as to the amounts of monies received from those litigations or proof as to whether the amounts for expenses which MICHAEL paid her were used for their intended purposes and if they were the amounts, if any, that were actually paid by SUSAN for those expenses.

53. MICHAEL is owed an amount, which is uncertain at this time, from SUSAN, for his half share of monies paid in these settlements and for his share of monies given to SUSAN to pay for expenses under the MSA.

54. An accounting is necessary to show the exact amount of monies due MICHAEL from SUSAN from those settlements and expenditures and the amount due MICHAEL would be shown by an accounting.

55. Prior to initiating this lawsuit, MICHAEL demanded that SUSAN account to him for the exact amounts of said settlements and expenditures, but she has refused, and continues to refuse to fully provide him with those exact amounts and credible written evidence (such as cancelled checks, bills, proof of payment, etc.) to establish those amounts. Nor has SUSAN paid MICHAEL the amounts owed, which the accounting would establish.

56. MICHAEL is entitled to and should be given a full and complete accounting regarding said settlement payments and expenditures. He has been damaged by SUSAN's failure and refusal to provide said accounting and her refusal to pay MICHAEL the amounts owed him, as will be shown by that accounting. MICHAEL should be awarded damages in the amount to be shown by that accounting (at least $378,808), plus interest on said amounts at the legal rate.

**SIXTH CAUSE OF ACTION**
**(MANDATORY INJUNCTION)**

57. Plaintiff incorporates by reference the preceding paragraphs 1 through 56 as though fully set forth herein.

58. Pursuant to the MSA, MICHAEL is entitled to one-half of the net proceeds (after reimbursement and payment to him of all amounts owed to him by SUSAN which were paid or advanced by him to SUSAN) from the sale of the 147 Waterside property.

59. SUSAN has indicated that she wants to sell the 147 Waterside property and move to Arizona, but SUSAN does not want to pay MICHAEL half or any of the sale proceeds from the sale of the 147 Waterside property.

60. MICHAEL wants to have the 147 Waterside property sold and to be paid his half of the equity in the property (after he is paid the amounts he is owed and has advanced in connection with that property).

61. SUSAN and MICHAEL are at an impasse since SUSAN is refusing to sell the property and pay MICHAEL his half of the equity in the house, which he believes is in excess of $400,000. MICHAEL wants the 147 Waterside property fixed up as quickly as commercially reasonable to maximize its sales value and to sell the 147 Waterside property as soon as possible. The property is in disrepair and delay in repairing the property and selling it now is causing the property to depreciate in value and jeopardizing MICHAEL's equity in the house and risking the possibility that some or all of MICHAEL's equity in the property will be lost.

62. Because SUSAN has refused and is refusing to repair and sell the 147 Waterside property and to pay MICHAEL what he is owed for his equity in that property. SUSAN's

refusal to sell the 147 Waterside property so MICHAEL can receive his equity in the property is a violation of the MSA. MICHAEL, a fifty percent (50%) owner of the property, is entitled to specific performance of the MSA and cooperation from SUSAN to facilitate a sale of this real property which is unique and for which money damages would possibly be an inadequate remedy if the property is not sold now because SUSAN has not been willing and may not be willing to sell the property now and pay MICHAEL his full share or the property. As a result, the property may decline in value. A mandatory injunction is therefore required to order that, as soon as commercially reasonable, the 147 Waterside property be reasonably repaired and then immediately thereafter sold and that MICHAEL and SUSAN share equally the net sale proceeds (after MICHAEL is paid or reimbursed for payments he made and/or advanced in connection with the property).

**WHEREFORE**,

Plaintiff respectfully requests the following relief:

1. For damages, including, but not limited to, all amounts Plaintiff is entitled to receive under the Marital Settlement Agreement in the amount of at least $378,808;

2. As to the Fifth Cause of Action for Accounting, that Defendant account to Plaintiff for all litigation settlement monies received and for all expenses made and all payments received in connection with the 147 Waterside property and to pay Plaintiff the amounts he is owed;

3. As to the Sixth Cause of Action, that an injunction be issued ordering SUSAN, as soon as commercially reasonable, to agree to list for sale and to sell the 147 Waterside property and that the proceeds of that sale be placed in escrow from which to pay Plaintiff 50% of the net proceeds from the sale of the 147 Waterside property (after first deducting and paying Plaintiff from the gross sale proceeds, all amounts otherwise owed MICHAEL by SUSAN, plus prejudgment interest thereon and Plaintiff's attorney's fees);

4. For special damages according to proof;

5. For an award of punitive damages according to proof;

6. For reasonable attorneys' fees and costs of suit as allowed by law, including, but not limited to, as provided by the Marital Settlement Agreement;

7. For his costs herein incurred;

8. For prejudgment interest; and

9. For such other and further relief as the court deems just and proper.

DATED: July 12, 2017           LAW OFFICES OF SAMUEL KORNHAUSER

                               By:     /s/ Samuel Kornhauser
                                   Samuel Kornhauser
                                   Attorney for Plaintiff,
                                   Michael H. Federighi

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury as to all Causes of Action.

DATED: July 12, 2017                    LAW OFFICES OF SAMUEL KORNHAUSER


By: _____/s/ Samuel Kornhauser_____
    Samuel Kornhauser
    Attorney for Plaintiff,
    Michael H. Federighi