UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL H FEDERIGHI,<br><br>    Plaintiff,<br><br>        v.<br><br>SUSAN FEDERIGHI,<br><br>    Defendant. | Case No. 17-cv-03937-HSG<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 13 |

Pending before the Court is Defendant Susan Federighi's motion to dismiss Plaintiff Michael H. Federighi's complaint under Federal Rule of Civil Procedure ("Rule") 12(b)(1) for lack of subject matter jurisdiction. Dkt. No. 13 ("Mot."); *see also* Dkt. No. 1 ("Compl."). Defendant filed the motion on September 1, 2017. On October 2, 2017, Plaintiff opposed the motion. Dkt. No. 21 ("Opp."). Defendant replied on October 15, 2017. Dkt. No. 28 ("Reply"). On October 31, 2017, the Court took the matter under submission. *See* Civil L.R. 7-1(b). For the reasons set forth below, the Court **GRANTS** Defendant's motion to dismiss.

**I.  BACKGROUND**

Plaintiff is a resident of Florida and Defendant is a resident of California. Compl. ¶¶ 1-2. The parties were married on August 7, 1986 and a judgment for dissolution of marriage issued on December 28, 1990. *Id*. ¶¶ 6-7. On April 23, 1992, the parties entered into a written agreement entitled "Marital Settlement Agreement," which governs issues incident to the parties' divorce proceeding. *Id.* ¶ 8; *see* Dkt. No. 1-1 ("MSA" or "the Agreement"). The MSA states that the parties' intent is to: (1) settle all property rights and interests, and all rights to maintenance and support; and (2) adjust all claims of any kind between the parties. MSA ¶ 2. The Agreement sets forth terms and obligations concerning spousal support, child custody, division of property

1  (including real property, personal property, and corporate property), debts and obligations, tax liabilities, and fees and costs associated with the dissolution of the parties' marriage. *Id.* ¶¶ 3-10.

Plaintiff alleges that Defendant "failed and refused, and continues to fail and refuse to perform" several obligations as stated in the MSA, including to pay or repay Plaintiff a share of sales proceeds or monies owed for real estate and personal properties (for instance, a motor yacht and air conditioner replacement unit), a share of real estate taxes, a share of insurance proceeds, and her half of home repairs. Compl. ¶¶ 10-16. Plaintiff asserts the following six causes of action, all of which arise from or pertain to the MSA: (1) breach of marital settlement agreement; (2) breach of implied covenant of good faith and fair dealing under the marital settlement agreement; (3) fraud and intentional misrepresentation; (4) negligent misrepresentation; (5) accounting as per the marital settlement agreement; and (6) mandatory injunction.

## II. LEGAL STANDARD

The party asserting jurisdiction bears the burden to show that jurisdiction in fact exists. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994); *Stock West Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir, 1989) ("A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears."). A Rule 12(b)(1) motion can present either a facial or factual attack on jurisdiction. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). In a facial attack, the defendant "asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id*. (quoting *Safe Air for Everyone v. Meyer,* 373 F.3d 1035 (9th Cir. 2004)). The Court accepts as true all of the allegations in the complaint, and draws all reasonable inferences in the plaintiff's favor. *Id.* A factual attack, on the other hand, "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* In a factual attack, a party may introduce evidence outside the pleadings, to which the party invoking federal jurisdiction must respond with "competent proof" under the same evidentiary standard that applies on summary judgment. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (quoting *Hertz Corp. v. Friend*, 559 U.S. 77, 96–97 (2010)).

## III. DISCUSSION

Defendant asserts a facial attack on jurisdiction. Defendant argues, in short, that the Court is precluded from adjudicating this dispute under the domestic relations exception to federal diversity jurisdiction. Mot. at 2-3. According to Defendant, all of Plaintiff's claims arise from or pertain to the MSA, and therefore necessarily concern issues relating to divorce, alimony, or child custody. *Id.* at 3. There is no dispute that Plaintiff brings this action on the basis of federal diversity jurisdiction under 28 U.S.C. §1332. *See* Compl. ¶ 4.

The Ninth Circuit has repeatedly recognized a "historic domestic relations exception to diversity jurisdiction." *Csibi v. Fustos*, 670 F.2d 134, 135 (9th Cir. 1982); *see Atwood v. Fort Peck Tribal Court Assiniboine*, 513 F.3d 943, 946–47 (9th Cir. 2008) ("The Supreme Court has long recognized that, when the relief sought relates primarily to domestic relations, a doctrine referred to as the domestic relations exception divests federal courts of jurisdiction."). Two kinds of cases fall within this exception: those suits "most closely resembling historically ecclesiastical actions," and those "where domestic relations problems are involved tangentially to other issues determinative of the case." *Csibi*, 670 F.2d at 137. Cases in the former category are "considered absolutely outside federal court jurisdiction." *Id.* To discern whether a case falls into this first category, courts ask whether the "primary issue concerns the status of parent and child or husband and wife." *Id.* (citing *Buechold v. Ortiz*, 401 F.2d 371 (9th Cir. 1968)). If the parties' family or marital relationship comprises the "primary issue," then the Court lacks jurisdiction. *See id.* In contrast, "federal courts may exercise their discretion to abstain from deciding" cases in the second category. *Id.* The second category includes cases "award[ing] damages . . . in a suit between two spouses for breach of contract. . . ." *Id.*

This case falls squarely within the first category of domestic relations actions. Plaintiff, by his own admission, requests that the Court enforce the MSA and award damages pursuant to that agreement. The MSA, in turn, contains obligations made part of an order of the California family law court. Compl. at 11-12; Opp. at 2-3; *see* MSA at 22-23. The MSA arises directly from the parties' divorce proceeding, expressly refers to that proceeding, and sets forth the parties' agreement on issues incident to that proceeding, including spousal support, division of property,

debts, and income taxes. MSA ¶¶ 2-10. Plaintiff represents that the California family law court "approved the MSA," which "settled" and "adjudicated the [parties'] dissolution proceedings." Dkt. No. 30 at 3-4. Plaintiff does not dispute, and the complaint on its face states, that every cause of action arises from or relates to the MSA. *See, e.g.*, Opp. at 4 ("Plaintiff alleges six causes of action against Defendant stemming from Defendant's breach of the written settlement agreement and related tortious conduct."). Accordingly, the primary issue in this case is the parties' obligations under the MSA as former spouses, and the Court lacks jurisdiction. *See Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992) (reaffirming the validity of the domestic relations exception "as it pertains to divorce and alimony decrees and child custody orders"); *Csibi*, 670 F.2d 134 (finding that the court lacked jurisdiction because the case "turn[ed] on" a determination of the parties' marital status).

Even the authorities that Plaintiff cites find that jurisdiction is lacking in cases, such as this one, where a court is required to interpret or enforce the parties' divorce decree. *See* Opp. at 1. For instance, in *Chevalier v. Estate of Barnhart*, the Sixth Circuit found that the plaintiff's claims were not subject to the domestic relations exception because they did not require the Court to "dissolve the marriage, award alimony, monitor [the plaintiff's] need for maintenance and support, or enforce [the defendant's] compliance with a related court order. . . ." 803 F.3d 789, 798 (6th Cir. 2015) (emphasis added). Not so here: Plaintiff expressly requests that the Court enforce a court-approved agreement that settles all claims arising from the parties' dissolution of marriage. Furthermore, the Sixth Circuit in *Chevalier* distinguished the court's prior holding in *McLaughlin v. Cotner* as "stand[ing] for the uncontroversial proposition that a plaintiff may not artfully cast a suit seeking to modify or interpret the terms of a divorce, alimony, or child-custody decree as a state-law contract or tort claim in order to access the federal courts." *Id.* (citing 193 F.3d 410, 414 (6th Cir. 1999)). That finding contravenes Plaintiff's suggestion that framing his suit as a contract or tort action gives the Court jurisdiction. *See* Opp. at 1, 3. The Ninth Circuit in *Cisbi* similarly rejected Plaintiff's reasoning:

> [I]f litigants were allowed to invoke diversity jurisdiction over domestic relations cases by pleading an independent tort, the longstanding domestic relations exception to federal subject-matter

> jurisdiction would be completely swallowed up. For example, child
> and spousal support matters could come into federal court if a clever
> pleader alleged a claim for wrongful interference with economic
> advantage. An area of law formerly the 'virtually exclusive
> province of the states' would be federalized. In sum, tort allegations
> shall not provide a means for circumventing this important
> exception to federal court jurisdiction.

670 F.2d at 138 (citation removed).

But even if the Court is not required to abstain from exercising jurisdiction, the Court may do so in its discretion. A court has discretionary authority to decline jurisdiction over the second category of domestic relations cases, including those where "a plaintiff has commenced a federal action to enforce a state court status decree." *McIntyre v. McIntyre*, 771 F.2d 1316, 1318 (9th Cir. 1985) (citing *Bennett v. Bennett,* 682 F.2d 1039, 1042–44 (D.C. Cir. 1982)). As discussed, Plaintiff's complaint seeks enforcement of an agreement settling all claims as between ex-husband and wife, pursuant to their divorce decree. *Cf. id.* (reversing the district court's dismissal for lack of jurisdiction because the plaintiff did <u>not</u> "seek to determine status or to enforce a domestic relations decree in the guise of some other action"). That is sufficient to bring the case within this second category.

In arguing that the Court must adjudicate this dispute, Plaintiff fails to cite cases recognizing the Court's discretionary authority to abstain from actions in this broader category. *See* Opp. at 14 (citing *Peterson v. Babbitt*, 708 F.2d 465, 466 (9th Cir. 1983)); *Kinney v. City of Simi Valley*, Case No. 89-56241, 1991 WL 92332 at *1 (9th Cir. 1991)[1] ("It is true that the 'domestic relations' exception to federal jurisdiction is a narrow one. . . [t]here is, however, a broader class of cases involving domestic relations where the federal court has jurisdiction but may choose to abstain from exercising it."). And though Plaintiff argues that the California family law court's jurisdiction is not exclusive or continuing, Opp. at 2, that would not divest the Court of its discretionary authority to decline jurisdiction here.[2] Plaintiff fails to present a compelling

---

[1] Though not binding on the Court, the Court considers *Kinney* for its persuasive value.
[2] The parties disagree on whether the California family law court has retained jurisdiction over this matter. The Court does not need to decide this dispute, as Plaintiff has failed to carry his burden to show jurisdiction. Thus, the Court' **DENIES AS MOOT** Defendant and Plaintiff's requests for judicial notice, Dkt. Nos. 29, 31, and Plaintiff's administrative motion to strike Defendant's reply or to file a sur- reply, which is predicated on the allegation that Defendant raises this argument for

reason why, "in the interests of justice," this case should remain in federal court. *See Kinney*, 1991 WL 92332 at *1 (holding that the district court did not abuse its discretion in declining jurisdiction over a dispute that was "at its core" a custody disagreement) (citing *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 814 (1975)). Rather, the state court, having previously adjudicated the parties' divorce proceeding, is the appropriate forum to decide whether Defendant in fact breached an agreement arising directly from that prior proceeding. *See id.* (finding that there is a "strong state interest in domestic relation matters," and that state courts can have "superior competency. . . in settling family disputes because regulation and supervision of domestic relations within their borders is entrusted to the states" (citing *Coats v. Woods,* 819 F.2d 236, 237 (9th Cir. 1987))).

In this regard, allowing Plaintiff to further amend his complaint would be futile: all of Plaintiff's allegations arise from the MSA and conduct alleged in relation to the MSA. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (holding that "the district court did not err when it dismissed the [second amended complaint] with prejudice, since it was clear that the plaintiffs had made their best case and had been found wanting."). The Court therefore **DISMISSES WITHOUT LEAVE TO AMEND** Plaintiff's claims.

## IV. CONCLUSION

For these reasons, the Court **GRANTS** Defendant's motion to dismiss, and **DISMISSES WITHOUT LEAVE TO AMEND** Plaintiff's claims. The clerk is directed to enter judgment in accordance with this order in favor of Defendant and to close the case.

**IT IS SO ORDERED.**

Dated: 5/15/2018

HAYWOOD S. GILLIAM, JR.
United States District Judge

---

the first time in her reply, Dkt. No. 30.